# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

ORLIE J. SEVERSON,

                    Plaintiff,

v.                                                    Case No. 19-CV-463

ANDREW M. SAUL,

                    Defendant.

## DECISION AND ORDER

### PROCEDURAL HISTORY

Plaintiff Orlie Severson alleges she has been disabled since August 10, 2015, due to sciatica nerve pain, right knee pain from arthritis, and bulging and compressed discs in her lower back. (Tr. 76.) In February 2016 she applied for disability insurance benefits. (Tr. 208-09.) After the Social Security Administration (SSA) denied her application initially (Tr. 75-85) and upon reconsideration (Tr. 86-98), a hearing was held before an administrative law judge (ALJ) on April 24, 2018 (Tr. 32-74). On May 14, 2018, the ALJ issued a written decision, concluding that Severson was not disabled. (Tr. 12-31.) The Appeals Council denied Severson's request for review on January 31, 2019. (Tr. 1-5.)

This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 15, 17), and the matter is now ready for resolution.

**ALJ'S DECISION**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1571-1576. The ALJ found that Severson "did not engage in substantial gainful activity during the period from her alleged onset date of August 10, 2015 through her date last insured of December 31, 2017." (Tr. 17.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The ALJ concluded that, through the date last insured, Severson "had the following severe impairments: obesity; sciatica; lumbar degenerative disc disease; cervical spondylosis; left hip degenerative joint disease; right knee effusion, edema, and meniscal degeneration; left knee chondrocalcinosis and effusion; trochanteric bursitis; meralgia paresthetica; and pyrifemoris [sic] muscle syndrome." (Tr. 17.)

At step three the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing, and meets the twelve-month duration requirement, 20 C.F.R. § 404.1509, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that, through the date last insured, Severson "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (Tr. 20.)

Between steps three and four, the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from her impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore*, 743 F.3d at 1121). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1529; SSR 96-8p. In other words, the RFC determination is a function-by-function assessment of the claimant's "maximum work capability." *Elder v. Asture*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that, through the date last insured, Severson

> had the residual functional capacity to perform a range of light work as
> defined in 20 CFR 404.1567(b); such that she could only occasionally work

overhead on the left; could not push or pull on leg controls; could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; and must have avoided exposure to hazards such as unprotected heights, dangerous unshielded machinery, and open water.

(Tr. 21.)

After assessing the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. § 404.1565. The ALJ concluded that, through the date last insured, Severson "was capable of performing past relevant work as a sales clerk, food, . . . light as generally performed." (Tr. 26.) As such, the ALJ concluded that Severson "was not under a disability . . . at any time from August 10, 2015, the alleged onset date, through December 31, 2017, the date last insured." (Tr. 27.)

**STANDARD OF REVIEW**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *L.D.R.*, 920 F.3d at 1151-52 (quoting *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v.*

*Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R.*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## ANALYSIS

Severson contends that the ALJ erred in (1) evaluating the intensity, persistence, and limiting effects of her alleged symptoms; (2) weighing the medical opinion evidence; (3) assessing her ability to stand and walk; and (4) relying on the VE's testimony to conclude that she could perform her past relevant work.

### I.     Symptom evaluation

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p; *see also* 20 C.F.R. §§ 404.1529, 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the

individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ determined that Severson's "medically determinable impairments could reasonably be expected to cause symptoms; however, [Severson's] allegations concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical and other evidence in the record" (Tr. 24-25). The ALJ explained that: Severson "has not generally received the type of medical treatment one would expect for a totally disabled individual," Severson's symptoms "greatly improved" with a neuro stimulator implant and medication, an electromyogram (EMG)/nerve conduction study was normal, most of the imaging findings were only "mild," and physical examinations revealed both positive and negative findings. (Tr. 25.) The ALJ further explained that Severson's hearing testimony "detracted from her allegations." (Tr. 25.)

Severson argues that the ALJ applied the wrong standard when evaluating her alleged symptoms, failed to explain why the objective medical evidence did not support her allegations, "played doctor" when interpreting her lumbar spine MRIs, and reached unsupported conclusions about her testimony.

### A.    Subjective-symptom evaluation standard

Severson maintains that the ALJ improperly deviated from SSA regulations and rulings and held her allegations to a heightened not-entirely-consistent-with-the-record standard. (ECF No. 14 at 25-26; ECF No. 24 at 10-12.)

At the outset of his discussion of Severson's alleged symptoms, the ALJ outlined the correct legal standard, noting that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 21 (citing 20 C.F.R. § 404.1529 and SSR 16-3p).) While the ALJ later used the phrase "not entirely consistent" (Tr. 25), a review of the decision shows that the ALJ applied the correct standard. The ALJ did not require Severson's allegations to match the evidence exactly. Rather, he considered Severson's alleged symptoms in light of the evidence as a whole and concluded that some, but not all, of those symptoms were consistent with the record. (*See* Tr. 21-25.) The ALJ fashioned his RFC assessment accordingly, limiting Severson to a restricted range of light work.[1] He was not required to specify which statements were inconsistent with the evidence. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (citing *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)).

---

[1] Indeed, the ALJ noted that he included "additional limitations of no overhead work on the left, no foot controls, and no exposure to hazards" in part based on Severson's hearing testimony. (Tr. 26.)

**B.     Objective medical evidence**

The ALJ concluded that the objective medical evidence supported some of Severson's allegations. However, he found that the weight of the evidence did not support a finding that she was as limited as alleged. (Tr. 22.) Specifically, the ALJ noted that

> [w]hile physical examinations have observed positive findings including paraspinal tenderness, reduced lumbar and cervical range of motion, a positive straight leg raise, some isolated areas of reduced sensation, slightly positive Patrick's testing, pain over the sacroiliac joint, tenderness along the trochanteric bursa, shoulder tenderness, and antalgic gait, examinations have also repeatedly observed her to be in no acute distress, with 5/5 motor strength in all extremities, no edema, intact sensation, normal reflexes, negative straight leg raise bilaterally, normal coordination, no signs of pain behavior, normal gait, normal range of motion, and no tenderness.

(Tr. 25.)

Severson maintains that the ALJ erred in evaluating the objective medical evidence because he simply listed the evidence without explaining why the negative exam findings trumped the positive ones. (ECF No. 14 at 13-18; ECF No. 24 at 4-6.) She further maintains that the positive exam findings are consistent with her alleged symptoms and that the ALJ misleadingly presented the negative findings. According to Severson, the ALJ overstated the frequency with which she had a normal gait, no tenderness, and intact sensation; failed to mention that, while she did not exhibit signs of pain behavior, she did appear uncomfortable during several exams; and "cherry picked" the times she was in no distress.

The court finds no reversible error regarding the ALJ's consideration of the objective medical evidence in evaluating Severson's alleged symptoms. First, this case is not like those cited by Severson (*see* ECF No. 14 at 15-16) in which the ALJ presented only one side of the evidence or ignored significant evidence that detracted from his non-disability finding. The ALJ here discussed the objective medical evidence in detail, noting both positive and negative findings. (*See* Tr. 22-24 (citing Exhibit 1F, 2F, 3F, 4F, 5F, 6F, 7F, 8F, 11F, 12F).) Given those mixed findings, the ALJ reasonably determined that the medical evidence supported some of Severson's allegations but not to the degree she alleged. *See* 20 C.F.R. § 404.1529(a), (c) (requiring adjudicators to consider the objective medical evidence in evaluating an individual's symptoms); *see also* SSR 16-3p (same). Thus, although the ALJ found that the weight of the evidence did not support a finding that Severson was as limited as alleged, he did not conclude, as Severson asserts, that the objective medical evidence did not support her allegations.

Second, the ALJ's characterization of the negative exam findings was not misleading. The ALJ accurately noted that, during more than one exam (i.e., "repeatedly"), Severson had a normal gait (Tr. 509, 512, 519, 559, 566, 620) and did not exhibit any tenderness (Tr. 361, 367, 407, 422, 614). Severson essentially asks the court to reweigh this evidence and substitute its opinion for that of the ALJ. However, the court is not supposed to do that. *See Moore*, 743 F.3d at 1121. To the extent the ALJ overstated how often Severson presented with "intact sensation," any error was harmless. While it

appears true that only one exam describes Severson's sensation as "intact" (Tr. 387), others indicate "no clear dermatomal sensory deficits" (Tr. 486, 492, 548, 595) and several note only a "minimal" reduction in sensation (Tr. 486, 512, 559). Minor imprecision about a single negative exam finding does not warrant remand.

The ALJ also accurately noted that Severson repeatedly exhibited no signs of pain behavior upon examination. (Tr. 489, 492, 548, 597). It is true that the ALJ failed to note that Severson also appeared "uncomfortable" during those exams, but an ALJ need not discuss every piece of evidence in the record, *see Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted), and Severson has failed to demonstrate that this omission impacted the ALJ's ultimate symptom evaluation. Similarly, the ALJ accurately noted multiple occasions on which Severson presented in no distress. (Tr. 354, 407, 445, 614, 624, 627.) Severson has not shown that the context of those visits, which the ALJ supposedly ignored, was crucial to understanding her overall condition. Thus, the ALJ did not engage in impermissible cherry-picking.

C. **Imaging results**

Severson maintains that the ALJ erred in evaluating the results of two lumbar spine MRIs. The first, taken in August 2015, revealed "[i]ntervertebral disc bulging and right central annular fissuring at the L3-4 level. Bulging disc comes into close proximity to the anterior margin of the exited left L3 nerve root. No significant right neural foraminal narrowing." (Tr. 372.) When describing the results of this MRI, the ALJ did not

mention the proximity of the bulging disc to the nerve root. (*See* Tr. 22.) This omission

was crucial, according to Severson, because her pain management provider, Ellias Mazin,

MD, thought that finding could explain Severson's left leg symptoms. (ECF No. 14 at 19-

20 (citing Tr. 486).)

State agency medical consultants Ronald Shaw, MD, and Mina Khorshidi, MD,

considered that the bulging disc was in close proximity to a nerve root and still found

Severson capable of performing light work with certain postural and environmental

limitations. (*See* Tr. 79-83, 91-96.) The ALJ accepted that portion of the state doctors'

opinions. (*See* Tr. 25-26.) Thus, although the nerve root finding was not explicitly

mentioned by the ALJ, "it was factored indirectly into the ALJ's decision as part of the

doctors' opinions." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

That Dr. Mazin's discussion of the 2015 MRI post-dated the state doctors' review

is immaterial. Dr. Mazin erroneously indicated that Severson had a "herniation . . .

touching the left L3 nerve." (Tr. 559.) The record clearly shows that Severson had a *bulging*

*disc* that was *in close proximity to* the left L3 nerve root. (*See* Tr. 80, 371-72, 511, 550-51, 558.)

Moreover, Dr. Mazin relied in part on the MRI merely to explain *possible* causes for

Severson's symptoms; he did not indicate a definitive diagnosis. (*See* Tr. 486.)

The second MRI, taken in July 2016, revealed "[m]ild, broad-based left paracentral

disc protrusion at L5-S1 with disc material abutting the left S1 nerve in the lateral recess"

and "[m]ild diffuse disc bulge with mild central stenosis at L3-4 unchanged." (Tr. 650-

51.) While the ALJ accurately noted the results of this MRI (Tr. 23), Severson criticizes him for not mentioning it later in his decision when assessing her alleged symptoms (ECF No. 14 at 20). Severson also claims that the ALJ "was not equipped with the medical knowledge to discern whether that finding was significant." (ECF No. 14 at 20-21.)

When evaluating Severson's alleged symptoms, the ALJ specifically noted that imaging studies revealed lumbar disc bulging and that the results of imaging studies were generally mild. (*See* Tr. 25.) The 2016 lumbar spine MRI fits that description. No expert was needed to reach that conclusion. *See Olsen v. Colvin*, 551 F. App'x 868, 874-75 (7th Cir. 2014) (finding no error where "the ALJ summarized the results of each MRI and drew a conclusion from those diagnostic tests that [the claimant's] abnormalities mostly were mild").

The cases cited by Severson are distinguishable. Unlike like the ALJs in *Akin*,[2] *McHenry*,[3] *Goins*,[4] and *Vinnedge*,[5] the ALJ here did not interpret raw medical data to conclude that an imaging study was consistent with his assessment. Rather, he accurately quoted the results of an MRI and reasonably determined that Severson's alleged disabling symptoms were not entirely consistent with those mild findings. *Johnson*[6] is also distinguishable. The ALJ in that case inaccurately characterized an MRI as revealing only

---

[2] *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018).
[3] *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).
[4] *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).
[5] *Vinnedge v. Berryhill*, Case No. 18-C-229, 2019 U.S. Dist. LEXIS 32657, at *7-10 (E.D. Wis. Mar. 1, 2019).
[6] *Johnson v. Berryhill*, No. 17 CV 50058, 2018 U.S. Dist. LEXIS 92757, at *9-10 (N.D. Ill. June 1, 2018).

"mild" problems even though that descriptor was not used in the report's conclusion section. Here, all the findings on the 2016 MRI were described as "mild."

### D. Hearing testimony

The ALJ provided several reasons why Severson's testimony detracted from her allegations. (*See* Tr. 25.) First, treatment records contradicted Severson's testimony that the neuro stimulator did not relieve her symptoms. Second, while Severson testified that she had nerve damage in her left leg, the EMG test was normal. Third, there was no evidence in the record that Severson's prior employer had "poisoned" her. (Tr. 25.) Fourth, Severson's testimony that it took her eight hours to do the dishes was "rather extreme." (Tr. 25.) Finally, the ALJ noted that "[t]he last two items are consistent with a therapist's observation that [Severson] is dramatic." (Tr. 25 (citing Exhibit 9F).)

Severson takes issue with three of the ALJ's reasons. (*See* ECF No. 14 at 22-24; ECF No. 24 at 8-10.) She first maintains that a misunderstanding regarding the nature of her diagnosis (that is, whether the pain she was experiencing in her left leg was caused by nerve damage or not) is not a sufficient reason for discounting her alleged symptoms. But the hearing transcript does not support Severson's position that it was just a misunderstanding. Severson did not provide a general explanation for her left leg issues. Rather, she specifically stated that her doctors had told her that her pain was caused by nerve damage. (Tr. 36-37, 45-46, 51.) The ALJ reasonably determined that this testimony was inconsistent with the record, including a normal EMG. (*See* Tr. 390.)

Severson's second challenge concerns the ALJ's use of the term "poisoning." It appears the ALJ was referencing Severson's testimony about why she stopped working at Sturm Foods back in 2004. Severson claimed that she forced Sturm to fire her after she almost died from an allergic reaction to its product. (Tr. 60-61.) The ALJ improperly characterized this alleged incident as a poisoning; Severson never used that term. Also, while the record does not date back to 2004, there is at least some support in the record for Severson's claim, as she indicated on her Work History Report that she stopped working quality control at a food packaging company because she was allergic to the product. (*See* Tr. 278-84.)

Severson also maintains that the ALJ improperly used character evidence to discount her testimony. The court agrees. SSR 16-3p advises that

> [a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, [SSA] adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.

The ALJ attempted to tie the so-called poisoning, as well as Severson's testimony about taking all day to do the dishes, to a psychological evaluation where the examiner noted that Severson's "manner was a bit dramatic and vague in terms of her complaints." (Tr. 602.) Severson alleged that she became disabled in August 2015. Thus, the 2004 allergy incident was outdated and unrelated to any of Severson's statements concerning her

alleged symptoms. The ALJ seized on that incident, and Severson's one-time "dramatic" presentation, to improperly conclude that she must have exaggerated her other allegations.

Courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.*

Overall, the court does not find that the ALJ's evaluation of Severson's symptoms lacks explanation and support in the record. The ALJ determined that Severson's impairment improved with conservative treatment, a finding unchallenged here. Also, the ALJ did not err in finding that Severson's allegations of disabling symptoms were not entirely consistent with the record, including physical exam findings, the results of imaging studies, and several statements Severson made at the administrative hearing. *See* 20 C.F.R. § 404.1529 (requiring adjudicators to consider, among other factors, the objective medical evidence, the effectiveness of medication, and treatment used for symptom relief). At worst, the ALJ overstated the frequency of one negative physical examination, omitted a qualification regarding another physical exam finding, and provided one unsupported reason (that which characterized Severson's testimony as having said she had been poisoned) and one improper reason (Severson's alleged

15

"dramatic" presentation) to discredit Severson's hearing testimony. These minor flaws are not enough to undermine the ALJ's conclusion that Severson was not as limited as she alleged. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (citations omitted) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are.").

II.    **Opinion evidence**

In assessing Severson's RFC, the ALJ gave some weight to the opinions of state agency medical consultants Dr. Shaw and Dr. Khorshidi, finding their opinions "generally consistent with and supported by the evidence as a whole." (Tr. 25.) To support this finding, the ALJ summarized the objective medical evidence, which largely tracked his summary of the evidence used to evaluate Severson's alleged symptoms. (*See* Tr. 25-26.) However, according to the ALJ, this evidence (and Severson's hearing testimony) supported additional limitations not found by the state doctors, including "no overhead work on the left, no foot controls, and no exposure to hazards." (Tr. 26.)

Severson argues that the ALJ did not build an accurate and logical bridge between the objective medical evidence and his decision to partially credit the state doctors' opinions. (ECF No. 14 at 19; ECF No. 24 at 3-4, 6.) The court disagrees. As with his evaluation of Severson's allegations, the ALJ reasonably determined that the medical evidence—which included a mixture of positive and negative findings—generally supported the state doctors' opinions that Severson could perform light work with certain

postural limitations; however, a few additional limitations were warranted given that same evidence. The ALJ did not mischaracterize the nature of those findings.

III.    **Ability to stand and walk**

Severson argues that the ALJ erred by failing to articulate how long she could stand and walk. (ECF No. 14 at 27-29; ECF No. 24 at 3-4.) The court agrees. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," including exertional capacities regarding sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8p; 20 C.F.R. § 404.1545(b). "A function-by-function assessment of an individual's limitations ensures that the ALJ does not overlook an important restriction and thereby incorrectly classify the individual's capacity for work." *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. 2009) (citing SSR 96-8p). Nevertheless, "the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted).

The ALJ here violated SSR 96-8p when he failed to perform a function-by-function assessment of Severson's ability to stand and walk. Severson reported that her impairments impacted her ability to stand and walk (Tr. 285-93, 303-10) and testified that she could stand for about fifteen to twenty minutes at a time (Tr. 38). The record also revealed that she had difficulty being on her feet for long periods of time at her past job

(Tr. 396), she had positive imaging findings in her back and knees (Tr. 371-72, 382, 397, 413-14, 619, 650-51), and she sometimes had an antalgic gait upon examination (Tr. 387, 506, 509, 514, 517, 553, 556, 561, 564, 568, 570, 572). Despite this medical evidence supporting Severson's alleged inability to stand and walk for prolonged periods, the ALJ's decision is silent regarding this exertional capacity. *See* 96-8p ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

## IV.    Step-four finding

A specific finding as to Severson's ability to stand and walk was crucial to the ALJ's step-four finding. At step four, the ALJ concluded that Severson could still perform her past job as a sales clerk (food), as generally performed in the national economy. (Tr. 26.) In reaching this conclusion, the ALJ relied on the VE's testimony that a person with Severson's RFC could still perform the sales clerk job. (Tr. 26-27, 64-67.) However, when questioned by Severson's lawyer, the VE testified that, "generally speaking, a sales clerk is on their feet all day long." (Tr. 72.) The hypothetical posed to the VE and the ALJ's ultimate RFC assessment did not reflect that Severson was capable of meeting that requirement.

The Commissioner argues that the ALJ's step-four finding is supported by the VE's testimony that the sales clerk job was compatible with light work and the opinions of Drs.

Shaw and Khorshidi. (ECF No. 23 at 18-19.) But neither the VE's testimony nor the state

doctors' opinions support a finding that Severson could be on her feet all day long (i.e.,

up to eight hours per day). The ALJ's first hypothetical did not include an explicit

standing limitation. Rather, the ALJ asked the VE to consider an individual of Severson's

age and educational level who had "an exertional capacity for light work as defined by

the Department of Labor and the Commissioner of Social Security." (Tr. 66.) The

Department of Labor's *Dictionary of Occupational Titles* indicates that light work "requires

walking or standing to a significant degree." *See* U.S. Dep't of Labor, *Dictionary of*

*Occupational Titles*, App'x C (4th ed., rev. 1991), *available at*

https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM (last accessed

Mar. 10, 2020). The SSA considers a job to be in the light exertional category "when it

requires a good deal of walking or standing," 20 C.F.R. § 404.1567(b)—that is, "standing

or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR

83-10. Being able to stand or walk at least six hours per day is not equivalent to standing

or walking the full eight hours.

Likewise, Drs. Shaw and Khorshidi opined that Severson could stand or walk for

about six hours in an eight-hour workday. (*See* Tr. 82, 94.) Even if that was the maximum

allowable duration provided on the SSA form, *see* Form SSA-4734-BK, *available at*

https://secure.ssa.gov/apps10/poms/images/SSA4/G-SSA-4734-BK-1.pdf (last accessed

Mar. 9, 2020), the state doctors' opinions that Severson could stand or walk at least six

hours per day does not support finding that she could perform a job that required all-day standing. Accordingly, without a specific finding as to Severson's ability to stand and walk, the ALJ's step-four finding is not supported by substantial evidence.

**CONCLUSION**

The ALJ did not commit reversible error in evaluating Severson's subjective symptoms or weighing the medical opinion evidence in the record. However, the ALJ did err in failing to engage in a function-by-function analysis of Severson's ability to stand and walk throughout a workday. This error was material because the ALJ's unfavorable decision was based on Severson's purported ability to perform a past job that required being on her feet all day long. Consequently, remand is required for consideration of that issue and, potentially, the ALJ's RFC assessment and step-four finding.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and this matter is **remanded** for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of March, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge